Our next case for argument is 24-1291, Dexcom v. Stewart. Mr. Vandenberg, please proceed when you're ready. May it please the Court. The Court should reverse for three primary reasons. First, a partially blank canvas does not teach all possible ways of filling in the blanks. Second, a logical fallacy is not a reasonable inference that a poseda would make. And third, new matter that is added to an application after it's filed is not 102e prior art. So I would invite the Court's attention to our blue brief on page 18, where we have a drawing of the Feldman figure 4A. So this is blue brief, page 18. This is Feldman 4A as filed. And what we see in the upper right-hand corner is 29cc. That is a contact portion above the skin for one of the electrodes. And from that, we see two lines that go down vertically. Then they go to the right horizontally, and then they go down vertically again. And we see here that when they go down vertically the second time, they get narrower, which is significant later on. This picture is worth a thousand questions. For instance, Feldman doesn't say what those two lines are. He doesn't say whether those are two separate wire traces or if the space between them is a trace, a single trace. I'm going to interrupt you for a minute. I understand your argument. And if I were the fact finder, I might find this very convincing. But one concern I have is that the board relied on numerous things for a different fact finding than the one that you're advocating for right now, including the two-electrode embodiment, which is shown, I think, in Figure 2A or 2B. I can't remember what the number was specifically. But it showed that there was an electrode followed by a nonconductive surface followed by an electrode. And so that is some substantial evidence to support the idea that the same configuration would exist for a three-electrode embodiment. In addition, there was the expert testimony, I think, of Dr. Smith, explaining how the various figures, including Figure 4B, supported the idea that these electrodes would be stacked or could be stacked, right, and that a person would read the prior art in that way. I mean, I see the point you're making is that maybe you could persuade a different fact finder that the configuration would be not so that the electrodes are stacked. But what do you do about the substantial evidence that undermines your position and, in other words, supports the board's position? Well, there's three problems with sort of the finding that the board made. First is it depended heavily on a logical fallacy, which we briefed and I can get to. The logical fallacy was Dr. Smith looked at these traces, not in this figure, but the later modified figure, and he said, because I only see one, I know that the other two underneath are stacked, which is logically illogical because they could be side by side. He couldn't see what was underneath them. The board accepted that logical fallacy as the only evidence for finding that these traces that run from 29cc or B or A down to under the skin, that those traces, as distinguished from the electrodes that are under the skin, were stacked. That was the only basis for finding that, did not rely on figure. You're saying the board only relied on the figure for its finding? No. I'm sorry. For the initial threshold finding that the traces were stacked as opposed to the electrodes, which comes later, for that finding, the board on Appendix 40, Appendix 44, relied solely on Dr. Smith's testimony. And Dr. Smith's testimony on that point was based solely on the logical fallacy that because I can only see one, the other two must be stacked in a particular arrangement. He said A was under B was under C. So that is a fundamental flaw with Abbott's case and, therefore, with the board's finding. The second problem is that the board did not deal with the fact that figure 4A says it is a perspective view. And Abbott, in their red brief, agreed 4A is supposed to be a perspective view. Well, if it's a perspective view and the electrodes or the traces are stacked, why isn't that shown in the perspective view from the side? As we see, say, the skin is shown here in a perspective view. The board didn't deal with that. So that's a fundamental flaw with their reasoning. It undermines the substantial evidence point Judge Stoll that you were making. And the third problem is they relied on the wrong version of figure 4A. They relied on a later version. We see here on blue brief 18, as I noted, that the lines from 29CC get narrower as they go down. As a result, if this is a single trace, we'll assume that, the space between is a single trace, it is narrower than the two traces coming from AA and BB as shown horizontally. That raises the question, how can something narrow hide two wide things that are behind it? Abbott didn't address that question. Dr. Smith, as far as we know, never saw this figure. The board didn't address that question. Instead, if we turn to Appendix 46, Appendix 46 is part of the final written decision of the board. And this is one of the two places, at least two places, where the board relied on Dr. Smith's logical fallacy. So we see a quote here. The board is quoting Dr. Smith, paragraph 206 of his declaration. And in that paragraph, he says that in figure 4A, the published version, the trace from AA to A is underneath the trace for B, which is underneath the topmost trace. And then he says, the last sentence, quote, this is why only the topmost conductive trace is visible in the portion leading to the electrodes. Again, that's illogical. The fact that you can only see, you know, the red thing here, CC, doesn't tell you that the two underneath are stacked. They could be side by side. And it's significant here, it goes to this logical fallacy, that this modified version of 4A is the opposite relative widths than we just saw in the filed version. If we see here the red color, which Abbott added the red to figure 4A as published, the red is thicker than, it got thicker when it went from horizontal to vertical, and it's thicker than the two horizontal green and blue traces. And therefore, it is less of a logical leap to say, as Dr. Smith said, that the red is blocking the narrower green and blue. But how does a narrow trace in the as-filed application block two things that are wider? So therefore, the differences between the published version and the as-filed version may seem small, and in most every other context wouldn't matter. And our point, excuse me, our point on 102E would be purely academic. But it's not academic here, because we don't know what Dr. Smith would have said had he focused on the actual prior art version of figure 4A. Was this argument about the difference between application figure 4A and published application figure 4A made in the patent owner response? Not per se, no. It was in the POPR in the patent owner. By the time we got to the patent owner response, however, we already had in the record evidence showing the difference. We'd already explained to the board the difference, and the board had already found there was a difference. The board said it was a small difference. I hear you, but the concern I have is waiver. I mean, if you make an argument in opposing the institution of the IPR, but you don't carry it forward in the patent owner response, the PTO has a rule that says it doesn't have to consider that argument, right? Agreed. However, one has to focus on what the argument is. The board did not find that we waived the argument we're making now. The board found, didn't say forfeit or waive, but that was the gist of it, that we waived arguing against admissibility of the Feldman publication. That's what the board found. We never argued that the Feldman publication was inadmissible. It's obviously admissible. The Feldman publication shows that it was published. It shows the filing date of the application. What it doesn't show is the contents of the application. And that argument we made in the patent owner response, and we made it again in the SIR reply. That's our argument. The argument is when you make a prior art challenge, you've got to bring the prior art. And in this instance, Abbott was on notice that there was a delta between the prior art application as filed, which is the prior art under 102E in Ray Hilmer, and what they had in the record, the publication. And therefore, it was incumbent upon them to then put in, post-institution, the application as filed. And the rules, the patent office rules, allowed them in their reply to put in the application as filed in response to the institution decision that said this issue needs to be developed further. So they had that opportunity, but they stubbornly stuck to something that's not prior art. And therefore, the three errors of the board, they relied as this threshold finding on a logical fallacy, which Abbott hasn't really tried to defend. How do you respond to the board's reliance on Feldman's Figure 2A, which is showing a stacked configuration of electrodes and nonconductive surfaces in between them, to support the finding that that would be a reasonable understanding of the implementation of Figures 4A and 4B embodiment? Well, two ways. One is under harmless error. It would be speculation to rule, we submit, that the board would have ruled the same way had they seen through the logical fallacy, had they relied upon the right prior art, and had they considered the fact that 4A is a prospective view. We don't know that their reliance on 2A would have mooted all of that. We suspect not. And then second, 2A was just a standard two-electrode in vivo sensor that had a single substrate with electrode on top and electrode on bottom. That was the same as Mao. It was the same as one of the SAY references, and therefore there was nothing special about 2A. Do you want to save the remaining time for rebuttal? Yes. Okay, let's hear from the government. Ms. Tavesey? Did I say your name right?  Oh, I'm sorry, wrong. No, I definitely didn't say your name right. I wasn't even looking at the right person. Sorry about that. Your Honors, and may it please the Court. The board's decision that the Feldman publication teaches the claimed electrode configuration is supported by substantial evidence, and the board properly relied on the Feldman publication as one of 2E prior art. Unless your Honors have a different preference, I'll start with the substantial evidence supporting the board's decision. And that evidence includes not, as opposing counsel said, just a partially blank canvas or just figure 4A. Instead it included Feldman's figures 4A, 4B, 2A, the knowledge of the ordinary artisan, which was the Hyland and Dobson reference, as well as combined Dr. Smith's testimony. So all of that together was substantial evidence support that one of ordinary skill in the art would understand the traces in 4A to be in a stacked configuration. With respect to the perspective view argument that opposing counsel made, respectfully that really just goes nowhere. While Feldman does describe 4A as a perspective view, that doesn't mean it's a good perspective view, because if it was, it would disclose what configuration in a three-day environment those traces were, whether it's the alternatives that Dr. Tapsack said or the way Dr. Smith interpreted it. If it truly was a good perspective view, it would show we all agree that these traces are there and do go somewhere. The fact is it just did not show it. What it does show is they cover up one another. So that, in conjunction with figure 4B, and then also figure 2A, which the board, as your Honor acknowledged, does look at and credited Dr. Smith's testimony to all that together. How do you respond to the point that the board and Dr. Smith should have only been looking at application figure 2A? As the board found properly, 102E, prior art, is the publication. That is the argument that they made. The only argument that they made is that you have to look at the application, not the publication. The language of 102E says the prior art is the application published. That is consistent with the large breadth of federal court precedent that says you look at the published application. It's consistent with MPEB 2136 that says the publication is the prior art. And while this is not in the record, it is also consistent with the legislative history in 1999 when they added published applications as 102E art. It is the publication that is the prior art. So the argument that the application is, quote, the actual prior art, which I think is the quote I heard, is simply incorrect, and that is what the board addressed. With respect to the argument that there needs to be written description support or that there is new matter with respect to the publication, that was waived. So in the patent owner response, all they argued was you need the application, and then there were some federal rules of evidence arguments. Those are the arguments that the board addressed. As the scheduling order says, and as was recognized in new or invasive, if you don't raise it in the patent owner response, it has been forfeited. While it's an interesting question of whether you actually need written description support in the application, it simply was not raised, and the Hilmer case that opposing counsel mentioned was a completely different scenario. That was talking about 119 priority support for the provisional. We're just talking about the application has filed. That date is what date publication gets. Let's see. And then finally, just one final point, unless your honors have any additional questions, I'd submit that it's not illogical, as has been frequently said, that there's this stacked configuration that just directly flows. It may not be agreeable to Dexcom, but that is the configuration that directly flows from all of the evidence together, 4A, 4B, 2A, and Highland and Dobson, which were the knowledge of the ordinary artisan that the board also found relevant. And do I take it that it's also your position that that's one possible logical understanding? There might be other understandings, but even if that's just one, that's enough, because Dr. Smith gave a reason for why one of ordinary scaly art would have been motivated to have that configuration. I would say it a little differently, Your Honor. I would say that the board found the preponderance of the evidence supported that that was the configuration that one of ordinary scaly art would fairly understand from 4A. The fact that Dexcom has presented alternative configurations, you can view that in two ways. One, as the board found, that does not teach away from the preponderance of the evidence supporting that this is the configuration that would be understood from 4A. And then before this court, the fact that an alternative reading may be reasonable does not mean that there's not substantial evidence supporting what the board found. There is substantial evidence that preponderance of the evidence that the board found supports that you would understand 4A as this configuration. The board did not say it would have been obvious to choose this or you would have been motivated. They said this is what we understand one of ordinary scale to have viewed 4A as disclosing. Unless Your Honors have any other questions, we ask that you affirm the board's decision. Okay. Thank you, Mr. Vandenberg. We have some rebuttal time. Thank you. On the substantial evidence, my friend said that the board relied on a lot of material to find that the traces were in a stacked configuration, relied on 2A, 4A, 4B, and Dr. Smith. That's incorrect. To find that the traces were in a stacked arrangement, the board relied on one thing, Dr. Smith's testimony as shown in Appendix 46, also Appendix 29. As far as then finding that the electrodes were stacked, they relied primarily initially on the fact that they had already found the traces were stacked. And the idea is that, well, if the traces are stacked, then the electrodes must be stacked so they line up. That's why the traces finding was the linchpin. Second, as far as perspective view, counsel suggested that, well, it doesn't show, the perspective view wasn't a good one. It would have shown something if it was good, if it was coplanar the way we say. That isn't true. If it's coplanar, the perspective view is just going to show what it shows now. There's nothing to show. There's no third dimension if it's coplanar. The fact that a perspective view does not show the third dimension means there is no third dimension. It means it's not stacked. And again, not asking the court to make findings on that, the board didn't consider that, didn't address that despite that being briefed. And as far as 102E, my friend said that in 102E the publication is the prior art. We respectfully disagree. We're right now fostering seven kittens. My wife has been sending around pictures of the seven kittens. If Feldman had been filed, the only drawings were the pictures of those seven kittens. And then months later, by amendment, added Figure 4. I assume my friend would agree Figure 4 is not 102E prior art. 102E basically encapsulated in the statute what the Supreme Court had said long ago. It's all about priority of invention. And the assumption under 102E and under Supreme Court law on Hilmer was that if you file an application describing an invention, we're going to assume the patent office could have published that the same day. We're not going to penalize you in determining priority of invention by the fact that it took time to issue it. And therefore, if the kittens was in the application and they have Figure 4 in the publication, Figure 4 is not prior art. The application is prior art, albeit it has to be published. In conclusion, our invention might seem obvious once you see it. But that it wasn't obvious ex ante, we submit, is proven nicely by Feldman. Feldman is the best Abbott could come up with, and it doesn't show hardly anything. It's basically Figure 4 is a cartoon drawing. It's supposed to be perspective view, but it doesn't show the claims five-layer arrangement in the claims. And therefore, we submit, since the errors that the Board made were built into the petition, the petition didn't have the prior art, didn't address the perspective view, and was based on Smith's logical fallacy, we ask that the Court reverse the Board's findings as to Ground 2. Okay, thank you. I take this case under submission.